UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Universal Hospital Services, Inc., Plaintiff, | Court File No. 01-CV-2072 PAM/JGL |
| v. | **UNDER SEAL** **SETTLEMENT AGREEMENT AND MUTUAL RELEASE AND ORDER** |
| Joseph Hennessy, Defendant. | |

## I. RECITALS

**WHEREAS**, the Plaintiff, Universal Hospital Services, Inc. ("UHS"), has asserted claims against the Defendant, Joseph Hennessy ("Hennessy"); and

**WHEREAS**, Hennessy denies that he has engaged in any wrongdoing or violated any obligations of any Confidentiality/Non-Competition Agreement, or that he may be liable to UHS on any other grounds; and

**WHEREAS**, UHS and Hennessy desire to avoid further protracted and expensive litigation to resolve their differences;

**NOW, THEREFORE**, in consideration of the promises and the mutual agreements, covenants and provisions contained in this Settlement Agreement and Mutual Release of Claims ("Settlement Agreement"), the parties hereto agree and declare as follows:

## II. AGREEMENT

1. Consideration. Hennessy agrees to act in accordance with the terms of the preliminary injunction order issued on April 19, 2002 by the Federal District Court of the State of Minnesota ("the Injunction") (attached as Exhibit A) through September 30, 2002 in

FILED 8-30-02
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK



(83)

settlement of all claims in law, and equity, as well as any other claims which have been or could have been asserted against Hennessy by UHS.

2. Specific Prohibitions. In accordance with the Injunction, Hennessy will not directly or indirectly, individually or through an affiliation or relationship with any person, corporation, or other entity:

> (a) engage in any activity that competes with UHS business within a one hundred (100) mile radius from the center of any city/cities in which a UHS office for which [Hennessy] has an oversight or management responsibility or through which [Hennessy] operated during the last twelve (12) months of employment with UHS is located (hereinafter referenced as Covered Geographic Area);
>
> (b) induce any Clients of UHS located with[in] the Covered Geographic Area to patronize any business which competes with UHS;
>
> (c) canvas, solicit, or accept any similar business from any Client of UHS located within the Covered Geographic Area of UHS;
>
> (d) request or advise any Client or Supplier of UHS to withdraw, reduce, or cancel their business or relationship with UHS;
>
> (e) disclose to any other person, firm, partnership, or corporation the names, addresses or telephone numbers; or other protected information of any of the Clients of UHS; or,
>
> (f) induce, canvas, solicit, request or advise any employees of UHS, to accept employment with any person, firm or business which competes with UHS.

3. Remedies for violation of Injunction. Should Hennessy violate the terms of the Injunction as described herein, UHS may seek all remedies available to it at law and equity.

4. Attorneys' Fees and Expenses. The parties agree that each of them will be responsible for the payment of their own attorney's fees and expenses in connection with this matter, except that should Hennessy violate the Injunction, he will pay all attorney's fees and

expenses incurred by UHS to enforce the injunction or to seek any other relief under the Confidentiality/Non-Competition Agreement.

5. Mutual Release. Except as provided in this Settlement Agreement for undertakings made by Hennessy herein, UHS for itself, its officers, agents, Boards of Directors, employees, predecessors, successors, assigns, insurers, subsidiaries and legal representatives, releases all claims against Hennessy, his agents, heirs, administrators, employers, representatives, successors and assigns, and anyone who obtains legal rights or claims from Hennessy arising out of or relating to Hennessy's past employment with UHS, including, but not limited to violations of the Minnesota Human Rights Act, Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, Employee Retirement Income Security Act, all other federal, state or local civil rights law or equal employment law; reprisal; infliction of emotional distress; negligence; defamation and defamation per se; breach of contract; breach of implied covenant of good faith and fair dealing; promissory estoppel; equitable estoppel; all other claims for unlawful employment practices; all claims for unlawful conduct whether in contract or in tort or under any other theory, whether legal or equitable; any federal, state, county or municipal law, statute, regulation or order whether or not relating to labor or employment; and all claims that could have been raised in any state or federal court or any local, state, or federal administrative agency of any kind, and all claims for attorneys' fees.

Hennessy, his heirs, administrators, representatives, successors and assigns, and anyone who obtains legal rights or claims from him also releases his right to any relief of any kind from UHS, its officers, agents, Boards of Directors, employees, predecessors, successors, assigns, insurers, subsidiaries and legal representatives, arising out of or relating to his past employment with UHS and post-employment activities as of the date of the signing of this Settlement

Agreement, including, but not limited to violations of the Minnesota Human Rights Act, Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, Employee Retirement Income Security Act, all other federal, state or local civil rights law or equal employment law; reprisal; infliction of emotional distress; negligence; defamation and defamation per se; breach of contract; breach of implied covenant of good faith and fair dealing; promissory estoppel; equitable estoppel; all other claims for unlawful employment practices; all claims for unlawful conduct whether in contract or in tort or under any other theory, whether legal or equitable; any federal, state, county or municipal law, statute, regulation or order whether or not relating to labor or employment; and all claims that could have been raised in any state or federal court or any local, state, or federal administrative agency of any kind, and all claims for attorneys' fees.

This Settlement Agreement does not release claims that arise from acts occurring after the date this Settlement Agreement is signed.

6. Continuing Jurisdiction. The parties agree that the Federal District Court of the State of Minnesota will retain jurisdiction over this matter to enforce the terms hereof, the Injunction, and the Confidentiality/Non-Competition Agreement. If Hennessy performs his obligations under the Confidentiality/Non-Competition Agreement in accordance with the Injunction, UHS agrees to file a Stipulation of Dismissal with the Court on or about October 1, 2002.

7. Non-Admission. The parties hereto recognize and agree that this Settlement Agreement does not constitute an admission by Hennessy of any violation of any contract, federal, state or local statute or principle of common law, and Hennessy denies all such allegations.

8. Confidentiality. The parties agree that the terms of this Settlement Agreement as well as all underlying claims UHS allegedly had against Hennessy, and the allegations of the claim are confidential and will not be disclosed, directly or indirectly, to any person or organization. However, the parties may disclose this Settlement Agreement to those people who need to know about it to effect the terms of this agreement and to their respective accountants and attorneys. Any persons receiving such confidential information must agree to be bound by its confidentiality provisions. The parties may respond to inquiries about the case by stating "The matter was resolved to the parties' mutual satisfaction," without violating this paragraph.

9. Waiver. To the extent that any rescission or waiting periods under the Minnesota Human Rights Act, Title VII of the Civil Rights Act of 1964 or any other law may be applicable to this Agreement, they are hereby knowingly and voluntarily waived by the parties.

10. Governing Law. This Settlement Agreement will be construed and enforced in accordance with the laws of the State of Minnesota.

11. Entire Agreement. This Agreement constitutes the entire agreement between the parties with respect to the subject matter herein and the parties agree that there were no inducements or representations leading to their execution of this Agreement, except as contained in the pages of this document setting forth the Agreement.

12. Voluntary and Knowing Action. The parties represent and agree that they have been represented by their own legal counsel, that have thoroughly read and understand the terms of this Settlement Agreement, and that the parties are voluntarily entering into this Settlement Agreement.

13. Order enforcing Agreement. The parties agree that the Court may enter the following order incorporating the terms of this Settlement Agreement.

**IN WITNESS WHEREOF**, the parties hereto have executed this Settlement Agreement on the respective dates set forth below.

**UNIVERSAL HOSPITAL SERVICES, INC.**

Dated: 8·20·02

By Michael R. Johnson

Its SR. VP - Administration

**JOSEPH HENNESSY**

Dated: Aug 5, 02

Joe Hennessy

Joseph Hennessy

**III. ORDER**

It is so ordered.

Dated: August 29, 2002

Paul A. Magnuson
United States District Court Judge

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Universal Hospital Services, Inc.,

Plaintiff,

v.

Joseph Hennessy,

Defendant.

Civ. File No. 01-2072 (PAM/JGL)

**MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiff's Motion for a Preliminary Injunction and Defendant's Motion to Dissolve the Temporary Restraining Order ("TRO"). The Court entered a TRO on January 23, 2002, restraining Defendant from violating the terms of his non-competition agreement with Plaintiff pending resolution of the forthcoming Motion for Preliminary Injunction.

**BACKGROUND**

The relevant background facts are set forth in detail in the TRO (Clerk Doc. No. 20). Defendant Joseph Hennessy was employed by Plaintiff Universal Hospital Services, Inc. ("UHS") as a District Manager in UHS's Boston office. UHS sells and leases movable medical equipment. Hennessy signed two essentially identical employment agreements, one near the inception of his employment and the second when he received stock options. Both of these agreements contained non-competition and non-disclosure provisions. UHS did not

APR 1 9 2002
FILED__________
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD________
DEPUTY CLERK________

EXHIBIT
A

discover the existence of the second agreement until shortly before the TRO hearing, and thus Hennessy did not discuss the second agreement in his brief in opposition to the TRO.

Hennessy subsequently left UHS and is now working for Freedom Medical ("Freedom"), a direct competitor of UHS. When considering UHS's request for a TRO, the Court found the first employment agreement void for lack of consideration. However, the Court determined that the second agreement was likely valid. Because that agreement was not materially different from the first agreement, the Court granted the requested TRO to prohibit Hennessy from violating the terms of the second agreement.

Hennessy now contends that the TRO must be dissolved. He argues that because he did not have notice that UHS would rely on the second agreement, the TRO was an ex parte TRO which, under Fed. R. Civ. P. 65(b), must expire within 10 days. Hennessy also contends that UHS has inordinately delayed bringing a preliminary injunction motion making dissolution of the TRO proper.

UHS responded to the Motion to Dissolve by filing the Motion for Preliminary Injunction. UHS contends that its delay in filing a request for injunctive relief is due to Hennessy's refusal to cooperate with discovery. In fact, Hennessy sought to stay discovery pending the Court's ruling on his Motion to Dissolve, and the parties eventually stipulated to a stay until resolution of Hennessy's Motion. In support of its Motion, UHS asserts that nothing has changed since the issuance of the TRO and that a preliminary injunction is appropriate to keep Hennessy from harming UHS's business.

Further complicating matters is the fact that Hennessy has moved to dismiss UHS's Complaint. Hennessy's Motion to Dismiss is not yet fully briefed, but raises many of the same issues raised in his Motion to Dissolve and in his opposition to the Motion for Preliminary Injunction. According to Hennessy, a preliminary injunction should not issue (and, presumably, the case should be dismissed) because the second employment agreement he signed is also void for lack of consideration.

**DISCUSSION**

**A. Motion to Dissolve TRO**

Hennessy argues that because the Court used the second agreement as the basis for the TRO and because Hennessy did not know prior to the TRO hearing that UHS or the Court would rely on the second agreement, the TRO was in effect ex parte and, pursuant to Fed. R. Civ. P. 65(b), expired ten days after its issuance. See Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70, 415 U.S. 423, 432 n.7 (1974). The Court notes that the TRO itself stated explicitly that Hennessy was restrained from violating the terms of the non-compete "[p]ending the Court's decision on Plaintiff's Motion for a Preliminary Injunction." (Jan. 23, 2002, Order at 8.)

Hennessy's claims that the TRO was effectively without notice and that he did not have a meaningful opportunity to respond are not well taken. The second agreement is in all material respects identical to the first agreement. The only difference between the two agreements for the purposes of evaluating the propriety of injunctive relief is the

circumstances under which each was signed. Hennessy certainly knew of the existence of the second agreement because he personally signed that agreement. Although he did not know prior to the hearing that UHS would rely on the second agreement, that possibility cannot have been a surprise to him. Moreover, there is no suggestion that UHS concealed the second agreement from Hennessy or the Court in order to surprise Hennessy at the TRO hearing. Hennessy had the full opportunity to respond to UHS's contentions both before and during the TRO hearing and has now had the opportunity to respond more completely to the second agreement. The Motion to Dissolve is denied.

**B. Motion for Preliminary Injunction**

An injunction may be granted only if the moving party can demonstrate: (1) a likelihood of success on the merits; (2) that the balance of harms favors the movant; (3) that the public interest favors the movant; and (4) that the movant will suffer irreparable harm absent the restraining order. Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 113 (8th Cir. 1981). Injunctive relief is considered to be a "drastic and extraordinary remedy that is not to be routinely granted." Intel Corp. v. ULSI Sys. Tech., Inc., 995 F.2d 1566, 1568 (Fed. Cir. 1993).

1. Validity of second agreement

The threshold issue to be determined in this case is whether the second agreement is valid. If it is and if Hennessy is violating the terms of that agreement, the Court may infer irreparable harm to UHS. See Alside, Inc. v. Larson, 220 N.W.2d 274, 278 (Minn. 1974);

Medtronic, Inc. v. Gibbons, 527 F. Supp. 1085, 1091 (D. Minn. 1981). In granting the TRO, the Court found that, because the second agreement was at least facially valid, UHS had proved both a likelihood of success and that it is suffering irreparable harm from Hennessy's breach of the restrictive covenants in that agreement. Hennessy now challenges the validity of the second agreement.

If an employment agreement is not entered into at the beginning of employment it must be supported by independent consideration. Nat'l Recruiters, Inc. v. Cashman, 323 N.W.2d 736, 740 (Minn. 1982). Hennessy signed the second agreement several months after beginning his job with UHS, as a condition of receiving UHS stock options. He contends that this agreement is void because the stock option plan was not registered in accordance with Minnesota or Massachusetts law and thus is not valid or enforceable and cannot constitute the independent consideration required for the second agreement.

a. Massachusetts law

Massachusetts generally requires registration of transactions in securities. Although there are broad exceptions to this rule, Hennessy claims that there is not a blanket exception to the registration requirements for employee stock option plans, citing to Mass. Gen. Laws ch 110A, § 402(a)(11). This section exempts such stock option plans from the registration requirements of other sections, but requires notice of the transaction to the secretary of the commonwealth within 30 days. Id. Section 402, however, is modified by several regulations, one of which exempts from registration requirements the following:

> (a) Compensatory arrangements. An offer or sale of a security issued in connection with a stock purchase, savings, option, profit-sharing, pension or similar employee benefit plan, provided the offeror is in compliance with the following conditions:
>
> 1. The issuer, parent corporation or any of its majority-owned subsidiaries offers or sells the security pursuant to a written benefit plan and/or written agreement relating to the compensation of the buyer; and
>
> 2. The offer or sale is in compliance with any applicable federal securities law.

Mass. Regs. Code tit. 950, § 14.402(B)(13)(a). There is no mention in this section of any requirement that "compensatory arrangements" must comply with a notice or filing requirement different from the registration requirement from which they are undisputedly exempt. Thus, even assuming that allowing Hennessy to participate in the stock option plan constituted an "offer or sale" for which the notice requirements of § 402(a)(11) might apply (an assumption that is quite tenuous, see discussion infra), it is at least arguable that the stock option plan UHS offered to Hennessy complied with Massachusetts law and was therefore sufficient consideration for the second agreement.

b. Minnesota law

Minnesota requires that any sale of a security in the state be registered. Minn. Stat. § 80A.08. Like Massachusetts, this general registration requirement is subject to numerous exceptions. Among the exceptions is the "offer or sale of a security issued in connection with any employee's stock purchase, savings, option, profit sharing, pension, or similar employee benefit plan." Id. § 80A.15(s). Although such plans are exempt from the

registration requirements of § 80A.08, the issuer is required to file a description of the transaction with the commissioner of securities in the state. Id. It is undisputed that UHS did not file such a description prior to allowing Hennessy to participate in the stock option plan.

According to Hennessy, the failure to file the required description means that the plan has no value. It appears to the Court that Hennessy reads Minnesota's securities laws too broadly. Minnesota requires the filing of a description when an "offer or sale" has been made. In this case, UHS did not offer securities to Hennessy. UHS merely gave Hennessy the opportunity to participate in the stock option plan and, at some point in the future, to purchase stock options pursuant to the terms of the plan. The Court has doubts about whether the filing requirements, either of Massachusetts or of Minnesota, even apply to what transpired in this case.

Accordingly, the Court finds that the stock option plan at issue complied with the law and therefore constituted sufficient consideration for the covenant not to compete in the second employment agreement.

2. Violation of the agreement

In the request for a TRO, UHS claimed that Hennessy was soliciting business for Freedom from at least three customers of UHS. Hennessy and his boss both deny that Hennessy has "solicited" any former customer. Hennessy goes further and contends that he has not breached any "binding contractual obligation" of any kind. (Answer at 1.) However,

given that Hennessy believes that he is not bound by the terms of the employment agreements at issue, this denial may not be as strong as it appears.

In light of the conflicting evidence submitted on this issue, the Court finds that there is a strong probability that Hennessy is violating the terms of the covenant not to compete, which prohibits competing with UHS and soliciting business from UHS customers. Moreover, to the extent that Hennessy denies that he is violating the terms of the non-compete, it is not clear why he would object to being prohibited from such violation.

3. Irreparable harm

As noted above, the Court may infer irreparable harm from the violation of a valid covenant to compete. Hennessy contends that UHS's claims of irreparable harm are belied by its delay in seeking this preliminary injunction. However, the Court notes that UHS agreed not to argue laches with regard to more than six weeks of that delay, and that UHS has attributed much of the recent delay to Hennessy's lack of cooperation with discovery since the TRO issued. Hennessy does not respond to that charge. Hennessy also points to the fact that Freedom withdrew its request for injunctive relief against a former Freedom employee who now works for UHS as evidence that there is no irreparable harm. The Court cannot agree. Whatever might have motivated Freedom in an entirely separate lawsuit has no bearing on the Court's findings in this matter. Given the Court's determination that Hennessy is violating the terms of a valid non-compete, the Court will infer that UHS will suffer irreparable harm absent the issuance of a preliminary injunction against such violation.

4. Likelihood of success

As discussed at length above, Hennessy is bound by a valid covenant not to compete, and Hennessy is violating the terms of that covenant. Thus, UHS has shown that it is likely to succeed on the merits of its claim against Hennessy.

5. Balance of harms/public interest

Because UHS has shown that it will suffer irreparable harm absent the preliminary injunction it seeks, any harm to UHS necessarily outweighs the harm to Hennessy. Indeed, as noted above, Hennessy denies that he is violating the covenant not to compete. If this is true, then it is likely that he will suffer no harm from the issuance of injunctive relief against such violation.

Finally, as noted in the TRO, public policy favors the enforcement of valid contracts and the protection of business interests. The public interest weighs in favor of UHS.

**C. Jurisdiction**

Hennessy claims that the Court lacks both personal jurisdiction and subject matter jurisdiction. This argument is mentioned only in passing in the briefs and according to counsel is the main subject of the briefing on Hennessy's Motion to Dismiss. The Court recognizes that it is bound to dismiss a lawsuit whenever it becomes clear that jurisdiction is lacking. In this case, without the benefit of full briefing on the issue, it appears that the Court has jurisdiction over Hennessy and over UHS's claims. Thus, without foreclosing full argument on the issue, the Court makes the preliminary finding that it has jurisdiction over

this matter. The Court will revisit the issue in more detail when considering Hennessy's Motion to Dismiss.

**CONCLUSION**

For the foregoing reasons, and upon all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant's Motion to Dissolve TRO (Clerk Doc. No. 29) is **DENIED**; and
2. Plaintiff's Motion for a Preliminary Injunction (Clerk Doc. No. 53) is **GRANTED** as follows:
    a. Pending trial or further Order of the Court, Defendant is hereby restrained from violating the terms of the Confidentiality/Non-Disclosure Agreement that he signed in connection with the UHS stock option plan. Specifically, Defendant must:
        i. promptly return to UHS any and all documents, records, magnetically stored information and other items in his possession which disclose, describe, or embody Confidential Information, as defined by the Agreement; and
        ii. not engage in any activity that competes with UHS's business within a 100-mile radius of Boston, Massachusetts, as such activities are defined in paragraphs 3(b) through (f) of the Agreement;

3. Pursuant to Fed. R. Civ. P. 65, within ten days from the date of this Order, Plaintiff shall post a bond in the amount of $50,000 to secure this Preliminary Injunction. In lieu of a bond, Plaintiff may post cash or its equivalent with the Clerk of Court. Plaintiff may continue the $10,000 bond with which it secured the Temporary Restraining Order and seek a new bond in the amount of $40,000 to secure the Preliminary Injunction.

Dated: April 19, 2002

Paul A. Magnuson
United States District Court Judge